# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| F.B., a minor, by and through next friend TRACY BONO, ) ) ) | |
| Plaintiff, ) ) | |
| ) | Case No. 4:22-CV-00503-JAR |
| v. ) ) | |
| FRANCIS HOWELL SCHOOL DISTRICT, ) ) ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Francis Howell School District's Motion to Dismiss. ECF No. 41. For the following reasons, the motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff F.B. is a minor with autism who attended an elementary school in Francis Howell School District ("Defendant") until March 2017. He alleges that Defendant's staff physically restrained and secluded him in an isolation room even though such practices were forbidden by his Individualized Education Plan ("IEP"). After Plaintiff complained to his mother, Tracy Bono, about the isolation room, Bono removed him from his school. He was later diagnosed with post-traumatic stress disorder, allegedly arising from his restraint and seclusion at school. On May 5, 2022, Plaintiff filed the present complaint by and through Bono, asserting claims under Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 (Count I), § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Count II), and 42 U.S.C. § 1983 for violation of his Fourth Amendment right against unreasonable seizures and his Fourteenth Amendment rights to

due process and equal protection (Count III). His complaint requests compensatory damages, injunctive relief, and attorney's fees.

On August 8, 2022, Defendant moved to dismiss the complaint, arguing, among other things, that Plaintiff failed to exhaust his administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* That act establishes "procedural safeguards to ensure individuals with disabilities will have the opportunity to obtain a free appropriate public education (FAPE)." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 592 (8th Cir. 2013) (citing 20 U.S.C. § 1415(a)). It also requires plaintiffs asserting that they were denied a FAPE to exhaust those procedures before filing suit in federal court. *Id.* (citing 20 U.S.C. § 1415(l)). This exhaustion requirement applies even to claims under other federal antidiscrimination statutes like the ADA or the Rehabilitation Act "to the extent those claims seek relief 'that is also available under [the IDEA].' " *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 947 (8th Cir. 2017) (quoting 20 U.S.C. § 1415(l)). Because Plaintiff did not avail himself of those procedures before filing suit, Defendant reasoned that the Court lacked subject matter jurisdiction over his claims.

The Court initially agreed. On December 15, 2022, it entered an order finding that the gravamen of Plaintiff's complaint was that Defendant denied him a FAPE. Even though Plaintiff sought compensatory damages, relief unavailable under the IDEA, the Court concluded that Plaintiff was required to exhaust the IDEA's procedures "regardless of whether the administrative process offers the particular type of relief that is being sought." *F.B. by & through Bono v. Francis Howell Sch. Dist.*, 646 F. Supp. 3d 1032, 1038 (E.D. Mo. 2022) (quoting *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 595 (8th Cir. 2013)), *vacated*, No. 23-1073, 2023 WL 7899323 (8th Cir. Nov. 16, 2023). Because Plaintiff failed to

2

do so, the Court dismissed Plaintiff's complaint for lack of subject matter jurisdiction without addressing Defendant's other arguments for dismissal.

Plaintiff timely appealed the dismissal of his request for compensatory damages. While his appeal was pending, the Supreme Court held that the IDEA's exhaustion requirement does not apply to suits that seek a remedy unavailable under the IDEA, effectively overruling the law in this circuit at the time. *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023). The Eighth Circuit accordingly vacated the Court's dismissal of Plaintiff's request for compensatory damages and remanded for further proceedings. *F.B. by & through Bono v. Francis Howell Sch. Dist.*, No. 23-1073, 2023 WL 7899323 (8th Cir. Nov. 16, 2023).

Upon remand, Defendant filed the present motion to dismiss, reasserting several arguments that the Court declined to address in its previous order. It first argues that Plaintiff failed to comply with Missouri's five-year statute of limitations for personal injury claims by waiting until May 2022 to file his complaint. Although Missouri's minority tolling statute delays the start of this five-year period for individuals who are younger than twenty-one or who are mentally incapacitated, Defendant argues that application of the tolling statute would frustrate the policies embodied in the ADA and the Rehabilitation Act. Defendant also argues that Count III, Plaintiff's 42 U.S.C. § 1983 claim, fails to allege violations of his Fourth and Fourteenth Amendment rights. Specifically, it claims that (1) its uses of restraint and seclusion were not unreasonable seizures, (2) Plaintiff did not allege a violation of a property interest supporting a procedural due process claim, (3) Plaintiff did not allege a conscience shocking violation of a fundamental right, and (4) Plaintiff has not alleged sufficient facts to demonstrate unequal treatment with his peers.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss under Rule 12(b)(6), the district court must "accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

**DISCUSSION**

**A.   Plaintiff's Claims are Subject to Missouri's Minority Tolling Provision.**

Title II of the ADA and § 504 of the Rehabilitation Act are similar anti-discrimination statutes. Both forbid discrimination against individuals with disabilities, but the Rehabilitation Act forbids such discrimination by federally assisted programs, 29 U.S.C. § 794(a), while the ADA prohibits such discrimination by public entities. 42 U.S.C. § 12132. The remedies available under these statutes are also identical: the ADA itself states that "[t]he remedies, procedures, and rights" under the Rehabilitation Act are also available under Title II. 42 U.S.C. § 12133. The Eighth Circuit has accordingly remarked that "cases interpreting either are applicable and interchangeable." *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (quoting *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996)).

Critically here, neither the ADA nor the Rehabilitation Act provide statutes of limitations, so the Court must apply the most closely analogous state statute of limitations to Plaintiff's claims. *See Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 854 (8th Cir. 2000). The parties agree that that statute is Missouri's five-year statute of limitations for personal injury actions.

4

Mo. Rev. Stat. § 516.120; *see Gaona v. Town & Country Credit*, 324 F.3d 1050, 1055 (8th Cir. 2003) (noting that most Courts "have applied the state statute of limitations for personal injury actions to claims under the Rehabilitation Act and the ADA"). The parties dispute, however, whether Missouri's minority tolling statute applies as well. That statute provides:

> [I]f any person entitled to bring an action in sections 516.100 to 516.370 specified, at the time the cause of action accrued be either within the age of twenty-one years, or mentally incapacitated, such person shall be at liberty to bring such actions within the respective times in sections 516.100 to 516.370 limited after such disability is removed.

Mo. Rev. Stat. § 516.170. If the statute applies here, Plaintiff's claims are timely because Plaintiff is a minor and the statute of limitations is tolled. If it does not, Plaintiff's claims are barred because the alleged conduct took place prior to Plaintiff's removal from the school in March 2017, more than five years before Plaintiff filed suit in May 2022.

When a court borrows a state's statute of limitations, it must also borrow the state's equitable tolling rules unless doing so "would defeat the goals of the federal statute at issue." *Hardin v. Straub*, 490 U.S. 536, 539 (1989). The Eighth Circuit has not squarely addressed whether Missouri's tolling statute would defeat the goals of the ADA and Rehabilitation Act, but it has previously declined to toll IDEA-related claims under these statutes because doing so would undermine the federal policy of "expeditious resolution of IDEA concerns." *Strawn v. Mo State Bd. of Educ.*, 210 F.3d 954, 958 (8th Cir. 2000). Defendant argues that the same result should obtain here because the IDEA, ADA, and Rehabilitation Act all "embody the same federal policies in favor of protecting the disabled." ECF No. 42 at 6.

The Court is unpersuaded. Though the IDEA, ADA, and Rehabilitation Act all share a general goal of protecting the rights of individuals with disabilities, they protect those rights in different ways. Critically, the IDEA prescribes procedures for the "expeditious resolution of

5

IDEA related claims," so students do not "lose 'day after irreplaceable day of education opportunity.' " *Strawn*, 210 F.3d at 958-59 (quoting *Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1193-94 (1st Cir. 1994)).  It was this "central federal policy" that the Eighth Circuit concluded would be frustrated by applying Missouri's minority tolling statute in *Strawn*.[1]  *Id.*  However, three years after deciding *Strawn,* the Eighth Circuit clarified that "[t]here are no corresponding federal policy concerns" under the ADA and Rehabilitation Act.  *Gaona v. Town & Country Credit*, 324 F.3d 1050, 1056 (8th Cir. 2003).  Unlike the IDEA, these statutes allow a plaintiff to recover compensatory damages.  *See Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011).  And as one court has explained:

> "[W]hile, under the IDEA, both addressing issues at a local level and in a timely fashion are important when seeking compensatory education, the provision of which may be time sensitive, those goals are less important when only money is at stake. . . . [W]hen a plaintiff is seeking damages other than compensatory education, there are no peculiarly time sensitive issues that would militate against minority tolling[.]"

*Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.,* No. CIV.A. 05-2535, 2014 WL 5343679, at *3 n.5 (E.D. Pa. Oct. 21, 2014).

Defendant cites numerous cases in which courts ostensibly reached the opposite conclusion: that applying the minority tolling statute would undermine the goals of the ADA and Rehabilitation Act.  ECF No. 42 at 6-7.  But in each of those cases, the gravamen of the plaintiffs' claims was that they were denied a FAPE under the IDEA, and they therefore implicated the IDEA's goal of preserving students' educational opportunities.  *See Dizio v. Manchester Essex Reg'l Sch. Dist.*, No. CV 20-11859-FDS, 2022 WL 974050, at *4 (D. Mass.

---

[1]  *Strawn* also concluded that the goals of the IDEA would be frustrated by applying Missouri's five-year statute of limitations for personal injury claims—the statute of limitations that Defendant agrees applies here.  *Strawn*, 210 F.3d at 958.  Defendant does not explain how the goal of providing expeditious resolution of claims would be frustrated by applying the minority tolling statute but not by applying Missouri's five-year statute of limitations for personal injury claims, as it did in *Strawn*.

Mar. 31, 2022) ("Courts have also declined to extend minority tolling statutes to claims brought under the ADA and § 504 of the Rehabilitation Act *that are premised on related IDEA claims*. . . . For the same reasons, this Court will decline to extend the Massachusetts minority tolling statute to the IDEA, § 504, and ADA claims here.") (emphasis added); *Vinluan v. Ardsley Union Free Sch. Dist.*, No. 19-CV-10674 (NSR), 2021 WL 1063482, at *8 (S.D.N.Y. Mar. 18, 2021) (applying equitable tolling rules to IDEA, ADA, and Section 504 claims would frustrate the IDEA's goal "to promote expeditious resolution of educational programming disputes."); *A.T. by & through L.T. v. Dry Creek Joint Elementary Sch. Dist.*, No. 2:16-CV-02925-MCE-DB, 2017 WL 2654854 (E.D. Cal. June 20, 2017) ("Plaintiff's § 504 and ADA claims are all premised on the denial of access to public education, and accordingly, applying § 352's minor tolling would be inconsistent with the IDEA's policies."); *Mullin v. Las Lomitas Elementary Dist.*, No. 03-5268 MMC, 2004 WL 2848021 (N.D. Cal. Apr. 13, 2004) (minority tolling statute inapplicable "to causes of action filed under the Rehabilitation Act and the ADA, where the plaintiff, as here, seeks relief that is also available under the IDEA."). None of those cases are relevant because Plaintiff seeks only compensatory damages, rather than a compensatory education under the IDEA, and therefore is not at risk of losing "day after day of education opportunity" if his claims are tolled by the statute.

Finally, Defendant argues that the minority tolling statute could toll certain ADA and Rehabilitation Act claims indefinitely, and "[t]his surely frustrates the federal policies behind [the] statutes." ECF No. 42 at 8. But Defendant does not explain how it does so. Because the IDEA and its related policy goals are inapplicable here, and Defendant does not otherwise explain how the minority tolling statute undermines the goals of the ADA and the Rehabilitation Act, the Court must apply the minority tolling statute to Plaintiff's claims. Because Plaintiff is a

7

minor, the statute of limitations on his claims was tolled. Defendant's motion to dismiss on this basis will be denied.

### B. Plaintiff Has Stated a Claim Under 42 U.S.C. § 1983 For Violation of His Fourth Amendment Right to Be Free from Unreasonable Seizure.

Defendant next moves to dismiss Plaintiff's § 1983 claim for violations of his Fourth and Fourteenth Amendment rights. It argues that Plaintiff failed to allege a violation of his Fourth Amendment right to be free from unreasonable seizure because Defendant's restraint and seclusion methods were, contrary to Plaintiff's allegations, permitted by his IEP. Defendant also argues that Plaintiff failed to allege a violation of his Fourteenth Amendment due process rights because use of an isolation room is not "conscience shocking" and not subject to the due process clause's procedural protections. Finally, Defendant argues that Plaintiff failed to allege a violation of the equal protection clause because he did not allege facts regarding other students who engaged in similar conduct.[2] Each of Defendant's arguments are addressed in turn below.

1. Alleged Fourth Amendment Violation.

"A litigant may state a Fourth Amendment violation by alleging facts which indicate a seizure occurred and that it was unreasonable." *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 633 (8th Cir. 2010). When a court evaluates the reasonableness of a seizure in a school setting, it "must account for the schools' custodial and tutelary responsibility over the students entrusted to their care." *Id.* (quoting *Shade v. City of Farmington*, 309 F.3d 1054, 1059 (8th Cir. 2002)). In this context, an authorized professional's treatment of a person with

---

[2] In its reply brief, Defendant argued for the first time that Plaintiff failed to allege an unconstitutional policy or custom supporting a municipal liability claim. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); ECF No. 44 at 5. The Court will not consider this argument because courts "generally do not consider issues raised for the first time . . . in a reply brief." *Majaney v. Warren County*, 206 F.3d 770, 771 n.2 (8th Cir. 2000).

8

disabilities is reasonable if his or her actions are "not a substantial departure from accepted professional judgment, practice, or standards." *Heidemann v. Rother*, 84 F.3d 1021, 1030 (8th Cir. 1996). And a student's IEP may evince accepted practices or standards. *See C.N.*, 591 F.3d at 633.

Though Plaintiff alleges that his IEP prohibited the use of restraint and seclusion, Defendant claims that Plaintiff's IEP authorized those practices. It accordingly reasons that these measures are not a substantial departure from accepted professional standards as a matter of law. To support its argument, it notes that similar allegations of "overzealous" use of isolation and restraint were insufficient to allege an unreasonable seizure in *C.N.*, 591 F.3d at 633. In that case (as in this one), a student with autism, C.N., alleged that a teacher at the defendant school district restrained and secluded him despite protestations from his mother. Also as in this case, the student brought a Fourth Amendment unreasonable seizure claim against the school district after he complained to his mother about the restraint and isolation. The District Court dismissed his claim, and the Eighth Circuit affirmed, explaining:

> Because C.N.'s IEP authorized such methods, [his teacher's] use of those and similar methods . . . , even if overzealous at times and not recommended . . ., was not a substantial departure from accepted judgment, practice or standards and was not unreasonable in the constitutional sense. Indeed, as the Tenth Circuit recently observed, we would place educators in a very difficult position if we did not allow them "to rely on a plan specifically approved by the student's parents and which they are statutorily required to follow."

*C.N.* 591 F.3d at 633 (quoting *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1252 (10th Cir. 2008)).

Although it is a close call, the Court finds *C.N.* distinguishable from the facts alleged here. While C.N.'s IEP "authorized the use of restraint holds and seclusion when C.N. exhibited various target behaviors," *Id.* at 627, Plaintiff's IEP appears to forbid restraint and seclusion except in crisis situations. Next to the question, "[w]ill the isolation room be used with the

9

student?" is a boxed checked, "No." ECF No. 13-1 at 27. The Crisis Plan section appears to have authorized restraint only when Plaintiff caused "repeated physical harm to himself or others" and "all other intervention strategies have not worked." *Id.* And it allowed the use of the isolation room only "if [Plaintiff] resists restraint for approximately 1 minute of time." *Id.* The IEP further underscores that "it is extremely important that the procedures be documented," and that "Parents will be contacted immediately if such procedures are used." *Id.*

The Court recognizes Plaintiff denies that his IEP authorized these practices, but even on Defendant's account of the IEP, Plaintiff has alleged use of these practices in a manner that plausibly departs from their authorized use. Specifically, he alleges that he was restrained and secluded in "response to insubordination and minor behaviors," (ECF No. 1 at ¶ 143) and "as a punitive measure" (*Id.* at ¶ 144) rather than a last resort to prevent harm to himself or others, and that Defendant failed to document its use of these practices or contact his parents. ECF No. 13-1 at 27. The Court is unable to say at this early stage of the proceeding that the use of restraint and seclusion under these circumstances is not a substantial departure from an IEP which appears to authorize restraint and seclusion only in certain crises. Whether Defendant actually restrained and secluded Plaintiff in a manner that substantially departed from any use authorized by Plaintiff's IEP is a factual issue to be resolved in further proceedings. Defendant's motion to dismiss on this basis will accordingly be denied.

2. <u>Alleged Fourteenth Amendment Due Process Violation(s).</u>

The Due Process Clause of the Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property without due process of law[.]" U.S. Const. amend. XIV, § 1. Courts have construed this clause as containing a procedural component and a substantive component. The former "provides the familiar guarantee of fair procedures[,]"

10

*Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 872-73 (8th Cir. 2007), while the latter "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  Defendant argues that Plaintiff has failed to allege a violation of either component because the alleged seclusion and isolation (1) was not a deprivation of a property right triggering the due process clause's procedural protections, and (2) was not a conscience shocking violation of a fundamental right.

The Court agrees that Plaintiff has failed to clearly allege a violation of either component of the due process clause.  To allege a substantive due process violation, Plaintiff must allege actions by a government official which "violated one or more fundamental constitutional rights" and were "shocking to the contemporary conscience." *C.N.*, 591 F.3d at 634 (quoting *Flowers*, 478 F.3d at 873).  But the complaint does not reference fundamental rights, conscience shocking violations, or substantive due process at all.  Moreover, Plaintiff's opposition memorandum does not explain what fundamental right was violated; he merely states that his allegations meet the substantive due process standard.  ECF No. 43 at 7; *see also* ECF No. 20 at 14.  Because "courts require 'a careful description' of the asserted fundamental liberty interest" when evaluating a substantive due process claim, Plaintiff's failure to identify any fundamental liberty interest is fatal to his claim. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 302 (1993).  But even if Plaintiff specified a fundamental liberty interest, Plaintiff alleges virtually no facts which would demonstrate that Defendant's violation of that right was conscience shocking, that is, that the violation was "so severe . . . [,] so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking

11

to the conscience." *C.N.*, 591 F.3d at 634 (quoting *Golden ex rel. Balch v. Anders*, 324 F.3d 650 (8th Cir. 2003). He has accordingly failed to state a substantive due process claim.

Plaintiff's procedural due process allegations are insufficient for similar reasons. To state a procedural due process violation, Plaintiff must allege facts showing that he was deprived of a liberty interest without due process. *See generally Swarthout v. Cooke*, 562 U.S. 216, 220 (2011). But again, Plaintiff does not specify which liberty interest was violated or what process he was constitutionally entitled to in his complaint. And Plaintiff's opposition memorandum does not address procedural due process at all.[3] The Court will accordingly dismiss Count III to the extent it alleges a due process violation.

3. <u>Alleged Equal Protection Violation.</u>

Finally, Defendant challenges Plaintiff's equal protection allegations. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, Plaintiff must at least allege that he was "treated differently than other persons who were in all relevant respects similarly situated." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 820 (8th Cir. 2011). Defendant argues, and the Court agrees, that Plaintiff has not done so. Plaintiff again makes very few allegations relating to his equal protection claim, and when he does, he alleges vague facts and legal conclusions. For example, he alleges that Defendant violated the equal protection clause "by subjecting [him] to harsher discipline than for those without disabilities who engage in similar conduct." ECF No. 1 at ¶ 168. But Plaintiff does not allege facts about "those without disabilities" or their "similar conduct" that would allow the Court to conclude that they were "in all relevant respects similarly situated." Moreover, to prevail on his

---

[3] He did not attempt to refute Defendant's argument in his opposition memorandum to Defendant's original motion to dismiss either. ECF No. 20 at 16-17.

claim, Plaintiff must then show that the disparate treatment was not rationally related to a legitimate government objective, *Stevenson v. Blytheville Sch. Dist. # 5*, 800 F.3d 955, 972 (8th Cir. 2015), and he does not attempt to do so. The Court will accordingly dismiss Count III to the extent it alleges a violation of the Equal Protection Clause.

## CONCLUSION

For the reasons described above, Defendant's motion to dismiss is granted as to Plaintiff's due process and equal protection violation allegations in Count III. All other grounds for dismissal will be denied. Plaintiff's ADA and Rehabilitation Act claims remain pending. Count III remains pending as to Plaintiff's Fourth Amendment allegations.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [41] is **GRANTED** in part and **DENIED** in part as stated herein.

Dated this 16th day of May 2024.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE